## McArthur vs. Slauson.

*September 3 — September 27, 1881.*

CONTRACTS. *(1) Commission of broker.*
REVERSAL OF JUDGMENT: *(2) For misleading instruction.*

1. Where A. promises to pay B. a certain sum if he will produce a purchaser of A.'s property at a specified price, B. cannot recover on such promise without producing a person able and willing to pay such price. The stipulation as to price is not *waived* by A.'s selling the property for a less price to a person produced by B., unless he does so with knowledge that such person is able and willing to pay the price stipulated in the contract between A. and B. A remark of DIXON, C. J., in *Stewart v. Mather*, 32 Wis., 344–349, distinguished.
2. A judgment reversed where an instruction to the jury on a material point was *misleading*.

APPEAL from the Circuit Court for *Racine* County.

The defendant appealed from a judgment rendered against him. The case is stated in the opinion.

The cause was submitted for the appellant on the brief of *H. V. Van Pelt*, his attorney, with *Jenkins, Elliott & Winkler*, of counsel.

*Henry L. Buxton*, for the respondent.

COLE, C. J. We think there must be a new trial in this case on account of the error in that part of the charge which will presently be noticed, and which was excepted to by the defendant. The complaint is founded on an express contract, whereby the defendant agreed to pay the plaintiff $500, as a broker, for services performed in and about the sale for the defendant of a certain mortgage and tax certificates. The plaintiff claims that he was employed by the defendant to find a purchaser of these securities, and that when he did so he was entitled to receive the above sum as compensation for his services. On the other hand, the defendant claims and insists that the contract was that he should pay the plaintiff the above sum providing the latter found and produced a pur-

chaser of these securities at a price equal to or greater than the full amount due upon them. The amount due upon the securities, according to their face, was about $12,800. They were sold by the defendant for $11,000. Now, according to the terms of the employment as claimed by the defendant, it is clear that the plaintiff would only be entitled to recover the stipulated sum when he produced a purchaser ready and willing to purchase the securities at their face value. This principle is well settled in the law. Indeed, its soundness was not questioned on the argument. And the learned circuit judge did in fact charge the jury, that if they should find from the evidence that this was the contract between the parties, then, before the plaintiff could recover anything, he must produce to the defendant a purchaser who was willing and ready to pay the whole amount due on the mortgage and tax certificates. But in connection with this charge, and in limitation or qualification of it, the court further instructed as follows:

"If, however, you find from the evidence that before the sale was made the plaintiff informed the defendant that Smith and Hewitt" (who were the purchasers) "were the men he had found to purchase the mortgage, and that after such information the defendant went and made the sale, that would be a waiver on the part of the defendant of any stipulation in regard to what price the property should be sold for, in the original contract between the parties."

We think this charge in respect to waiver was calculated to mislead to the prejudice of the defendant. On that question the instruction should have been, that, in case the jury found that the plaintiff contracted to produce a person able and willing to purchase the securities at their face value, and he did produce such a purchaser, then, if the defendant, with knowledge of the fact, went and sold the securities for a less sum, this would amount to a waiver on his part of the stipulation as to price in the original contract. The contract being as claimed by the defendant, then performance required the

plaintiff to produce a purchaser able and willing to pay the full face of the securities. This was a condition precedent to his right to recover the stipulated sum on the special contract. It is possible this is the meaning which the learned circuit judge intended to convey in the charge; but, if so, he failed to express himself with his usual clearness and precision.

It is suggested that the charge as given was taken from the opinion of Chief Justice Dixon in *Stewart v. Mather*, 32 Wis., 344–349. The remarks of the chief justice in *Stewart v. Mather* have reference to a state of facts quite different from those presented in this case on the part of the defense. As is well observed by defendant's counsel, that was an action on a *quantum meruit*. The agreement, as testified to by the plaintiff Stewart, was as follows: "Mather proposed to have the property sold, and would give five per cent. commission. He made the proposition to me that he would give five per cent. on any sale which might be made, he reserving the right to fix the price, and stated his price to be $15 per acre. . . . I told the defendants I would try and find them a purchaser. The next day I met both the defendants at the First National Bank. Mather related over the proposition of the previous day. Warner thought I should be bound to find a purchaser at $15 per acre. I told him I could do no such thing; that the price must be agreed upon between themselves and any purchaser I might find. The defendants finally concluded I had better find a purchaser. I began looking for one, . . . and about the first day of August succeeded in finding one." It was in reference to such a contract that the chief justice uses the language, quoted by counsel in this case, to the effect that, "where the price or other terms of a sale are fixed by the seller, in accordance with which the broker undertakes to produce a purchaser, yet if, upon procurement of the broker, a purchaser comes with whom the seller negotiates, and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or other-

McArthur vs. Slauson.

wise changes the terms of sale as proposed to the broker, so that a sale is consummated, or terms or conditions offered which the party proposing to buy is ready and agrees to accept, then, and in either such case, the broker will be entitled to his commissions at the rate specified in his agreement with his principal."

The proposition of law laid down by the chief justice in the above remarks is doubtless sound when applied to the facts and agreement he was considering. But here the defendant claims that there was a special contract by which the plaintiff undertook to furnish him a purchaser who should be willing and ready to pay the full amount due on his securities, for which service he was to receive $500. If this was the contract, it was incumbent upon the plaintiff to produce such a purchaser, or he was not entitled to recover the stipulated compensation. If the plaintiff produced such a purchaser, and the defendant, knowing that fact, went and made a sale at a less price, this, doubtless, would amount to a waiver.

The instruction was further objected to on the ground that there was no evidence that any such purchaser was produced by the plaintiff. It seems to us the evidence is very slight to establish that fact; but we prefer to place our decision upon the error in the instruction already pointed out, rather than upon the weight of testimony.

We do not deem it necessary to notice the other rulings relied on for a reversal of the judgment.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.*— So ordered.